John R. HARLEY

v.

SCHUYLKILL COUNTY et al.

Civ. A. No. 78–861.

United States District Court, E. D. Pennsylvania.

Aug. 23, 1979.

Carrie Menkel-Meadow, Philadelphia, Pa., for plaintiff.

Frank L. Tamulonis, Pottsville, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff John R. Harley has brought this civil rights action, raising a variety of theories in support of his request for relief. Defendants filed a motion to dismiss on several grounds. We ruled earlier on several portions of this motion, denying the motion to dismiss with respect to a number of plaintiff's claims.[1] However, other issues remained, and we believed further briefing by the parties would be helpful. There now remain before us essentially two issues for decision: first, whether the right to refuse to perform an unconstitutional act is a "right, privilege, or immunity secured by the Constitution and laws" within the meaning of 42 U.S.C. § 1983; and second, whether the plaintiff has the right to proceed against Schuylkill County for damages under either the Pennsylvania Constitution or the fourteenth amendment of the United States Constitution.

### I.

As this is a motion to dismiss, we must take plaintiff's factual allegations as true and construe them in a light most favorable to plaintiff. *E. g., Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint alleges that plaintiff John Harley was employed by the Schuylkill County Prison as a prison guard. On February 28, 1976, plaintiff reported to work on the second shift and was informed

---

1. By Order dated January 15, 1979, we denied defendants' motion to dismiss plaintiff's claim that defendants' actions deprived him of his liberty interest in violation of the due process clause of the constitution. We also denied motions to dismiss plaintiff's claims that his first amendment rights, as defined by *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), had been violated.

by the Acting Deputy of the First Shift that defendant Joseph Dooley, at that time the Acting Warden of Schuylkill County Prison, had left orders that inmate Kenneth Hennessey was to "stand check" in front of his cell, even if he had to be dragged from his cell. (¶ 12 of Plaintiff's Complaint) Upon examining Hennessey, plaintiff discovered that the inmate had previously been beaten and, in fact, Hennessey informed plaintiff that he had been dragged from his cell and beaten because he refused to stand check. (¶ 13 of Plaintiff's Complaint) Hennessey further informed plaintiff that he had refused to stand check because of his religious beliefs. (¶¶ 13 and 14 of Plaintiff's Complaint)

Plaintiff determined that Hennessey intended to refuse to stand check again, and that at that time, under the circumstances, the only way that the "check could be effectuated would have been to use unwarranted force, which would aggravate Hennessey's injuries." (¶ 18 of Plaintiff's Complaint) Plaintiff then proceeded, at the time of the first check, to secure Hennessey's cell and file a conduct report instead of forcing Hennessey to stand check. (¶ ¶ 19 and 20 of Plaintiff's Complaint)

Later that evening, plaintiff informed Dooley of these events and stated that in plaintiff's opinion further physical abuse of Hennessey would be illegal and improper under the circumstances. (¶ 21 of Plaintiff's Complaint) Dooley stated that he wanted Hennessey to stand check no matter what the circumstances ánd insisted that Hennessey be dragged from his cell. (¶ 22 of Plaintiff's Complaint) Plaintiff continued to refuse to obey this order because he felt that it was immoral and illegal. The complaint further alleged that the orders given by Dooley were unconstitutional, and that "their effectuation deprived Hennessey of his Fourth, Eighth, and Fourteenth Amendment Rights under the Constitution of the United States, and such orders, if carried out by plaintiff, would have subjected plaintiff to liability for such unconstitutional acts." (¶ 27 of Plaintiff's Complaint)

Subsequently, plaintiff and other guards met with the Schuylkill County Commissioners to discuss this incident. The meeting ended without resolution of the issues; however, the Commissioners stated that they would investigate the incident and notify plaintiff and the other guards of the results of the investigation. (¶¶ 28 through 30 of Plaintiff's Complaint) Plaintiff alleges that at no time during this meeting was he given notice of any charge for which he might be dismissed, nor was he given the opportunity to address any such charge. (¶¶ 31 and 32 of Plaintiff's Complaint) Later, plaintiff was informed that he was discharged, but given no reasons for his discharge.

However, the Commissioners' reasons for discharging plaintiff were widely reported in area newspaper articles. According to those reports, plaintiff was discharged for causing dissension between Dooley and the guards in the second shift. (¶ 35 of Plaintiff's Complaint) One of the defendants also appeared on a radio talk show and stated that plaintiff was dismissed for insubordination. (¶ 36 of Plaintiff's Complaint) Plaintiff alleges that the reasons given for his discharge were false. Finally, plaintiff alleges that, as a result of his discharge and the resultant injury to his good name and reputation, he was unable to find employment for approximately one year. (¶ 40 of Plaintiff's Complaint) Additionally, plaintiff alleges that his political affiliation was a substantial factor in his discharge. (¶ 41 of Plaintiff's Complaint)

Plaintiff alleges that his discharge was wrongful in that it was a deprivation of his liberty interest without according him due process of law; it constituted a violation of plaintiff's rights under the first amendment; it was based upon his refusal to perform an unconstitutional act; and it constituted a violation of rights secured under the Pennsylvania Constitution. Several of these issues have been dealt with previously, as noted above. We are here concerned only with the viability of plaintiff's claim that his dismissal was based upon the refusal to perform an unconstitutional act and the liability of the County for the constitutional torts of its employees.

## II.

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 on the grounds that he was discharged for refusing to perform an unconstitutional act. In connection with this claim, it is important to note that plaintiff is *not* seeking to vindicate prisoner Hennessey's constitutional rights. Rather, plaintiff is asserting a right personal to him; the right to refuse an order which would result in the violation of another's constitutional rights. The question presented here is whether this "right" is a "right[s], privilege[s], or immunit[y] secured by the Constitution and laws" as required by 42 U.S.C. § 1983.

At first blush, this question would appear to be one for which there is a simple answer, buttressed by a plethora of authority. In fact, there are surprisingly few authorities on this issue, and we could locate no case which discusses the matter in any great depth. *See, e. g., Parrish v. Civil Service Commission of County of Alameda,* 66 Cal.2d 260, 57 Cal.Rptr. 623, 425 P.2d 223 (1967) (holds that there is a right to refuse to obey an unconstitutional order; however, it is not clear from this case whether this right is secured by the United States Constitution); R. Vaughn, *Public Employees and the Right to Disobey,* 29 Hastings L.J. 261 (1977). Despite the absence of authority, however, we are confident that the right to refuse to violate another's federal constitutional rights is a right secured by the constitution.

█ We start with the proposition that no rights are created by § 1983; that section was enacted only "to ensure that an individual ha[s] a cause of action for violations of the Constitution." *Chapman v. Houston Welfare Rights Organization,* ⸺ U.S. ⸺, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Therefore, any rights sought to be vindicated under § 1983 must have their source in the constitution itself.[2]

Under the facts as alleged in the complaint, plaintiff would have been liable for a

deprivation of Hennessey's constitutional rights if he had proceeded to obey the order given to him. *See, e. g, Bracey v. Grenoble,* 494 F.2d 566 (3d Cir. 1974); *Curtis v. Everette,* 489 F.2d 516 (3d Cir. 1973). To put the matter another way, plaintiff had a clear duty under the constitution to refrain from acting in a manner that would deprive Hennessey of his constitutional rights. If plaintiff is under a *duty* to refrain from performing an act, then we believe that he has the concurrent *right* to so act. To hold otherwise would create an unconscionable burden upon one charged with the duty to uphold another's constitutional rights.

█ The issue remaining is whether that right is one "secured by the Constitution." The *duty* to refrain from acting in a manner which would deprive another of constitutional rights is a duty created and imposed by the constitution itself. It is logical to believe that the concurrent *right* is also one which is created and secured by the constitution. Therefore, we hold that the right to refuse to perform an unconstitutional act is a right "secured by the Constitution" within the meaning of § 1983.

We believe that our conclusion is supported by strong policy considerations. Parties such as plaintiff, who are acting in the capacities of prison administrators, policemen and the like, may daily be faced with situations where they are required to act in a manner which is consonant with the constitutional rights of others who are subject to their authority. The potential for abuse in these situations scarcely needs to be mentioned. If such persons are to be *encouraged* to respect the constitutional rights of others, they must at least have the minimal assurance that their actions are also protected by the constitution in those cases where they are confronted with the difficult choice of obeying an official order or violating another's constitutional rights.

The defendant has argued strenuously that the plaintiff could have obeyed the

---

2. Section 1983 also provides a cause of action for violation of some federal statutes. *See Chapman v. Houston Welfare Rights Org., su-* *pra.* That portion of § 1983 is not relevant to the instant discussion, however.

order given to him by his superiors without violating Hennessey's constitutional rights. However, at this stage of the proceedings, we are judging only the sufficiency of plaintiff's complaint and the allegations contained therein. *See Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Plaintiff clearly alleges that the effectuation of the orders given to him would have deprived Hennessey of his constitutional rights, and that defendant Dooley was informed of this fact. (¶¶ 21, 22, and 27 of Plaintiff's Complaint) In light of these allegations and the inferences flowing therefrom, we conclude that the motion to dismiss with respect to his claim must be denied.

### III.

The final question remaining for resolution is the liability of the County for the constitutional torts of its employees. Paragraph 48 of plaintiff's complaint states as plaintiff's fifth claim that "Defendant, Schuylkill County, is liable directly under the Fourteenth Amendment to the United States Constitution and the Pennsylvania Constitution [Article I, Section 1] for all claims stated in paragraphs 42 through 47 under the doctrine of Respondeat Superior." We ruled earlier that we had subject matter jurisdiction over the claim against the county defendant under the cases of *Gagliardi v. Flint,* 564 F.2d 112 (3d Cir. 1977) and *Pitrone v. Mercandante,* 572 F.2d 98 (3d Cir. 1978). We now proceed to consider whether plaintiff has stated a claim upon which relief can be granted against Schuylkill County.

The question of whether a direct cause of action may be asserted against a municipality under the fourteenth amendment is one which has not yet been determined by the Court of Appeals for this Circuit. However, in accordance with the teachings of *Gagliardi* and *Pitrone,* this court need not reach that difficult constitutional issue if there is a pendent statute law claim being asserted against the municipality, Therefore, the first question we will address is whether a valid state law claim is alleged

against the County of Schuylkill under article I, section 1 of the Pennsylvania Constitution.

Article I, section 1 of the Pennsylvania Constitution provides:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa.Const., art. I, § 1. This clause has been construed broadly to guarantee many of the same rights granted by the United States Constitution. *See, e. g., Best v. Zoning Board of Adjustment of City of Pittsburgh,* 393 Pa. 106, 141 A.2d 606 (1958) (requirements of article I, section 1 are the same as those in the fourteenth amendment of the United States Constitution); *Commonwealth v. Brown,* 8 Pa.Super. 339 (1898) (article I, section 1 is construed to protect many of the same rights protected by the United States Constitution). We conclude that, as applied to the facts of this case, the interpretation to be given to article I, section 1 of the Pennsylvania Constitution is indistinguishable from that given to the fourteenth amendment of the federal constitution.

Defendant has objected that there is no statute which executes the provision of article I, section 1 and that the section is not self-executing. It is true that many sections of the Pennsylvania Constitution have been held not to be self-executing, *see, e. g., Commonwealth v. National Gettysburg Battlefield Tower, Inc.,* 454 Pa. 193, 311 A.2d 588 (1973) (article I, section 27 is not self-executing); *Commonwealth v. Bricker,* 406 Pa. 422, 178 A.2d 699 (1962) (article V, sections 11 and 12 are not self-executing). However, in *Erdman v. Mitchell,* 207 Pa. 79, 56 A. 327 (1903), the Pennsylvania Supreme Court specifically held that article I, section 1 is self-executing. The Court in *Erdman* stated, "This clause, unlike many others in the Constitution, needs no affirmative legislation, civil or criminal, for its enforcement in the civil

courts. Wherever a court of common pleas can be reached by the citizen, these great and essential principles of free government must be recognized and vindicated by that court." *Id.* at 90–91, 56 A. at 331. So far as we can determine, this case remains the law of Pennsylvania.

■ Having determined that a direct cause of action exists under article I, section 1 of the Pennsylvania Constitution, and that that clause is to be given—at least under the facts of this case—the same interpretation as is given to the fourteenth amendment of the federal constitution, we must consider whether or not such a cause of action may be asserted against Schuylkill County under the doctrine of respondeat superior. In the case of *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973), the Supreme Court of Pennsylvania expressly rejected the doctrine of governmental immunity. The *Ayala* Court's opinion made it clear that governmental immunity was abolished with respect to municipal corporations proper, such as counties and cities. *Id.* at n.8. The abolition of governmental immunity for corporations has paved the way for holding municipalities responsible for the constitutional torts of their employees. In light of the *Ayala* decision, we conclude that the County of Schuylkill is liable for acts of its employees which violate article 1, section 1 of the Pennsylvania Constitution, where those employees are acting within the scope of their official duties.

Since we have concluded that plaintiff's complaint alleges a valid cause of action against the County of Schuylkill under the Pennsylvania Constitution, we have no occasion to reach the question of whether a direct cause of action under the fourteenth amendment of the United States Constitution may validly be asserted against the County. *See Gagliardi, supra,* and *Pitrone, supra.* We therefore deny defendant Schuylkill County's motion to dismiss.