Robert CARLEN, M.D., Plaintiff,

v.

**DEPARTMENT OF HEALTH SER-
VICES OF SUFFOLK COUNTY,
NEW YORK, et al., Defendants.**

No. CV 93–0187.

United States District Court,
E.D. New York.

Jan. 10, 1996.

Kathleen A. Carlsson, Sayville, New York, for plaintiff.

Robert J. Cimino, Suffolk County Attorney by Jeltje DeJong, Assistant County Attorney, Hauppauge, New York, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Robert Carlen, a physician formerly employed by the Suffolk County Department of Health Services, brings this action under 42 U.S.C. § 1983 against the County of Suffolk (the "County"), the Suffolk County Department of Health Services ("DHS"), and Dr. David Harris, individually and as the former Commissioner of DHS ("Commissioner Harris"). Plaintiff alleges violations of his constitutional rights under the First, Fifth and Fourteenth Amendments, and "indirectly" under the Eighth Amendment. Presently before the Court is defendants' motion to dismiss pursuant to Rule 12(b)(1) and (6) of Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Because defendants have already served an answer, their motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons below, defendants' motion is granted.

## I. BACKGROUND

The facts alleged in the Amended Complaint can be summarized as follows. Plaintiff was formerly employed in a part-time civil service position by the DHS as a physician at the Suffolk County Correctional Facility ("SCCF"). *See* Amended Complaint ¶ 14–15. He was responsible for providing health services to prisoners at the SCCF. *Id.* ¶ 5. At some point in and before 1986, a dispute arose over the extent of plaintiff's authority to use his best professional judgment in making patient medical chart entries and his duty to make other orders in his best professional judgment.

1. Plaintiff commenced this action by complaint dated January 14, 1993. Shortly thereafter, plaintiff filed an amended complaint dated January 19, 1993 (the "Amended Complaint"). Defendants filed their answer, and, following a stay of this action, now move against the Amended Complaint. In determining defendants' motion, the Court has considered only the pleadings and the matter submitted relevant to the state proceedings.

Plaintiff claims that, beginning as early as 1984, plaintiff's superiors, including the Director of DHS's Division of Patient Care Services, Dr. William Steibel ("Dr. Steibel"), demanded that plaintiff follow orders that did not comport with plaintiff's professional judgment, including refraining from making patient chart entries that criticized the care being rendered and recording the "truth" in "private" files, and refraining from providing necessary counseling to patients. *See id.* ¶¶ 29–65, 69–77. Defendants' acts, plaintiff complains, were "efforts of defendants to cripple Dr. Carlen in his professional practice at the jail." *Id.* ¶ 69.

In March 1986, and again in July 1986, plaintiff wrote to the New York State Department of Education ("DOE"), asking "whether an employed physician was permitted to follow orders affecting patient care that he himself did not agree with." *Id.* ¶ 79. In response, by letter dated July 22, 1986, Commissioner Ambach of DOE allegedly wrote: "All physicians licensed to practice medicine in New York State are expected to provide the same level of care to all patients, regardless of the setting of their practice. This is a fundamental principle which cannot be compromised or abrogated under any circumstances." *Id.* ¶ 80 (the "July 22 DOE Letter"). Plaintiff sent a copy of the July 22 DOE Letter to Dr. Steibel in October 1986 and to Commissioner Harris in October 1987. *Id.* ¶ 81. Upon receiving this letter, Dr. Steibel immediately instituted the County's "Progressive Discipline System" against plaintiff, with the result that "everything about Dr. Carlen's work was attacked," despite plaintiff's previous satisfactory work evaluations. *Id.* ¶¶ 82, 88, 94–98.

According to plaintiff, "defendants and their 'colleagues, subordinates and employees' developed and enforced policies, plans and orders that would have the effect of depriving Suffolk prisoners of adequate medical care." *Id.* ¶ 20. Plaintiff, however, "stood in defendants' way by refusing to cooperate in their schemes. He repeatedly protested them, first within the department and, when that proved unavailing, to the New York State Supreme Court." *Id.* ¶ 21. Because plaintiff refused to comply with defen-

dants' purported "schemes" concerning patient care, defendants "harassed plaintiff in his professional practice at the jail and attempted to coerce and frighten him into either obeying or resigning." *Id.* ¶ 24. As a result, on or about December 4, 1986, plaintiff commenced a proceeding pursuant to New York's Civil Practice Law & Rules ("CPLR") Article 78 in New York State court to enjoin Commissioner Harris, Dr. Steibel, and another of plaintiff's supervisors, Dr. Maury Greenberg ("Dr. Greenberg"), respondents therein, from interfering with plaintiff's professional judgment and performance of his professional duties in the treatment of SCCF patients. In the Article 78 proceeding, as alleged in the Amended Complaint, plaintiff

> alleged or offered documentary evidence of respondents' actions and policies in:
>
> > a.) threatening him with job loss if he advised and counseled his AIDS-infected sexually active needle-using patient of his medical condition;
> >
> > b.) suppressing AIDS and hepatitis B education for prisoners at risk;
> >
> > c.) maintaining deliberately incomplete official medical records, with the truth recorded only in private files;
> >
> > d.) depriving prisoner E.W., who had multiple sequelae of a gunshot wound to his abdomen, of a nutritional supplement he vitally needed;
> >
> > e.) depriving prisoner M.V., who had repeated vomiting, weight loss and a history of stomach trouble, of a diet Dr. Carlen had ordered;
> >
> > f.) depriving prisoner A.D. of a diet Dr. Carlen prescribed. A.D. had a history of ulcer and was doing well; his pain returned after Dr. Greenberg cancelled Dr. Carlen's diet;
> >
> > g.) abandoning the Coumadin prisoner to mortal danger in the face of Dr. Carlen's warning;
> >
> > h.) failing, on various occasions, to administer drugs Dr. Carlen prescribed, including special penicillin pills that were crucial to the care of one prisoner. Dr. Carlen stated that he never knew whether a medicine would reach a patient.

*Id.* ¶ 83. Plaintiff maintains that these acts, which are alleged in further detail in the Amended Complaint, *id.* ¶¶ 29–58, 69–77, "constituted an official pattern and practice of deprivation of Suffolk prisoners' Eighth Amendment right to adequate medical care." *Id.* ¶ 84.

The Supreme Court, Suffolk County, denied the injunction and dismissed the Article 78 proceeding by order dated April 28, 1987, on the ground that plaintiff had failed to exhaust certain administrative remedies. By decision dated May 2, 1988, the Appellate Division, Second Department, upheld the dismissal of the Article 78 proceeding for failure to exhaust administrative remedies. *See Carlen v. Harris,* 140 A.D.2d 288, 527 N.Y.S.2d 538 (2d Dep't 1988), *appeal denied,* 73 N.Y.2d 709, 540 N.Y.S.2d 1004, 538 N.E.2d 356 (1989) (*"Carlen I "*). However, the Appellate Division further found that the petition failed to state a cause of action:

> Over and above this flaw in the proceeding, we are of the view that the petition fails to state a cause of action. The respondents clearly had the authority to direct the manner in which the petitioner performed his duties. The petition and the papers submitted by the petitioner in response to the respondents' motion to dismiss fail to demonstrate that the respondents exceeded their authority in any way and is therefore insufficient as a matter of law.

*Id.* at 539 (citation omitted). Plaintiff was denied leave to appeal to the New York Court of Appeals.

Subsequently, and allegedly in retaliation for bringing the Article 78 proceeding, DHS charged plaintiff with 47 counts of misconduct and/or incompetence by notice dated January 15, 1988. Amended Complaint ¶ 99. These charges included: (1) failure to observe standard charting techniques; (2) disobedience to directives to participate in the "team approach to patient care"; (3) deviation from accepted medical practice; (4) refusal to accept medical supervision; and (5) refusal to provide care. *Id.* An administrative hearing pursuant to New York Civil Service Law section 75 was held on various dates between March 1988 and October 1989

(the "section 75 hearing"). In his Findings and Recommendations, dated January 23, 1990, a copy of which is attached to defendants' motion papers, the hearing officer dismissed the first count on consent as time barred, found plaintiff guilty of the remaining 46 counts, and recommended immediate termination (the "January 23, 1990 F & R"). As a threshold matter, the hearing officer rejected plaintiff's contention that the charges were brought against him in retaliation for his "whistle blowing activities," *i.e.,* the Article 78 proceeding he had brought. The hearing officer also rejected plaintiff's arguments that the County had treated him disparately from others and that his supervisors could not issue him orders concerning medical care or make him perform medical procedures with which he disagrees. Commissioner Harris adopted the hearing officer's January 23, 1990 F & R, and, on February 13, 1990, terminated plaintiff from employment (the "February 13, 1990 Determination").

Plaintiff maintains that, contrary to Commissioner Harris' determination, Dr. Steibel informed plaintiff on February 13, 1990 that he was fired, but "repeated emphatically that [plaintiff's] competence was never in doubt." *Id.* ¶ 115. In addition, plaintiff alleges that before defendants brought charges against him and initiated the section 75 hearing, Dr. Greenberg caused the DHS's Office of Professional Medical Conduct ("OPMC") to investigate plaintiff. *Id.* ¶ 107. Although, the OPMC subpoenaed (from DHS) and reviewed the same medical records at issue in the section 75 proceeding, *Id.* ¶ 108, by letter dated February 27, 1989, it informed plaintiff that it "determined that there is no evidence of professional misconduct and the investigation has been closed." *Id.* ¶ 109.

On or about June 4, 1990, plaintiff commenced a second Article 78 proceeding in state court against Commissioner Harris, this time to overturn the February 13, 1990 Determination. Plaintiff alleged that the section 75 hearing was initiated against him in retaliation for plaintiff's first Article 78 proceeding in violation of his state and federal constitutional rights to due process and equal protection, and that the hearing offi-

cer's findings were arbitrary and capricious and an abuse of discretion. Pursuant to CPLR § 7804(g), the case was transferred to the Appellate Division, Second Department. The Appellate Division, Second Department, by order dated January 18, 1994, confirmed the February 13, 1990 Determination and dismissed the second Article 78 proceeding on the merits. *See Carlen v. Harris,* 200 A.D.2d 619, 608 N.Y.S.2d 851 (2d Dep't 1994) ("*Carlen II*"). The Appellate Division found that there was substantial evidence to support the findings of guilt and that there was no support for plaintiff's retaliation claim. The court stated:

> Each of the charges and specifications levied against the petitioner was amply supported by substantial evidence adduced and there is no support for the petitioner's speculative claims that he was being punished for bringing a previous proceeding pursuant to CPLR article 78 challenging the respondent's authority to direct the manner in which he provided treatment to County patients. In this regard, we note that we previously determined, as a matter of law, that the respondent had the authority to direct the manner in which the petitioner performed his duties, and that the petitioner's arguments set forth in the instant proceeding virtually mirror those propounded and rejected earlier [in *Carlen I*].

*Id.* at 851. Plaintiff's request for leave to appeal the Appellate Division's decision in *Carlen II* to the New York Court of Appeals was denied.

Prior to any decision by the Appellate Division on the second Article 78 proceeding, plaintiff commenced this action pursuant to 42 U.S.C. § 1983, asserting claims based on the First, Fifth and Fourteenth Amendments for violations of his constitutional rights to free speech, equal protection, and substantive due process, and claims based "indirectly" on the Eighth Amendment rights of his prisoner-patients to adequate medical care. Plaintiff requests declaratory, monetary and injunctive relief seeking, among other things, annulment of the Commissioner's February 13, 1990 Determination terminating his employment, reinstatement with back pay, an order prohibiting defendants from continuing to deprive plaintiff and SCCF prisoners of their constitutional rights, compensatory damages, and attorney's fees.

After defendants filed the present motion, this Court stayed this action pending plaintiff's request for leave to appeal the Appellate Division's decision in *Carlen II* to the New York Court of Appeals, and defendants withdrew their motion without prejudice and with leave to renew. Following the denial of the request for leave to appeal, the stay of this action was lifted and defendants renewed their motion. Defendants argue that each of plaintiff's claims must be dismissed, whether under the doctrine of issue preclusion (collateral estoppel), for failure to state a claim for relief or for lack of jurisdiction.

## II. *DISCUSSION*

### A. *Substantive Due Process Claim*

■ As for plaintiff's substantive due process claim, this claim is barred under the doctrine of issue preclusion. The preclusive effect of a New York judgment in a subsequent federal action is determined by New York law. *See* 28 U.S.C. § 1738; *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)). Under New York law, "the doctrine of collateral estoppel [issue preclusion] 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.' " *Burgos v. Hopkins,* 14 F.3d 787, 792 (2d Cir.1994) (quoting *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984)). For issue preclusion to apply, the following requirements must be met:

> (1) "there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) "there must have been a full and fair opportunity to contest the decision now said to be controlling."

*Id.* (quoting *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725 (1969)); *Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir.1987); *Rameau v. New*

*York State Dep't of Health,* 741 F.Supp. 68, 70–71 (S.D.N.Y.1990).

The Appellate Division in *Carlen II* found that "[e]ach of the charges and specifications levied against the petitioner was amply supported by substantial evidence." *Carlen II,* 608 N.Y.S.2d at 851. The court also found that the charges brought against plaintiff were not in retaliation for his commencing the first state court Article 78 proceeding. *Id.* There is no indication that plaintiff did not have a full and fair opportunity to defend the charges brought against him or to raise and prove his retaliation claim, particularly considering that he was represented by counsel throughout the administrative and state court proceedings. These findings from the Article 78 proceeding are binding on plaintiff and preclude a determination by this Court that the Commissioner's February 13, 1990 Determination was arbitrary and capricious or a pretext for retaliation against plaintiff, *i.e.,* that it violated plaintiff's substantive due process rights. *See, e.g., Morpurgo v. Board of Higher Educ.,* 423 F.Supp. 704, 709–10 (S.D.N.Y.1976) (giving preclusive effect to determination in Article 78 proceeding that defendants did not act arbitrarily or capriciously in terminating plaintiff and that plaintiff's termination was not in retaliation for plaintiff's civil rights activities). In addition, any claim by plaintiff that, as a medical professional, he cannot be made subject to orders governing the manner in which he was to provide treatment to prisoner-patients was also decided—adversely to plaintiff—by the state court, *see Carlen II,* 608 N.Y.S.2d at 851 (citing *Carlen I,* 527 N.Y.S.2d at 539), and precludes relitigation of that issue in this Court.

Plaintiff argues that the state case is "not relevant to th[is] federal case" because "this federal case is not based on the identical facts as the state case." *See* Letter from Plaintiff's Counsel to the Court, dated February 7, 1994, at 1; Plaintiff's Memorandum of Law, dated April 11, 1995, at 2–3 ("Pl. April 11, 1995 Mem."). In this respect, plaintiff contends that this § 1983 action includes certain "events that occurred outside of, and after [the section 75 hearing] record was made, and which were not and could not be known to the Appellate Division," namely, the OPMC's February 27, 1989 determination and the purported admission by Dr. Steibel on February 13, 1990. In addition, plaintiff argues that this "new evidence" would "provide a compelling theory that the original proceeding failed to provide due process because it was a hoax, instituted solely to conceal acts which could subject the County to claims by prisoners." Pl. April 11, 1995 Mem. at 2. This Court is not persuaded by plaintiff's argument. These "events" do not entitle plaintiff to a redetermination by this Court of the administrative and state court determinations. Contrary to plaintiff's statement, the OPMC issued its determination almost one year *before* the decision in the section 75 hearing. As for Dr. Steibel's purported admission, plaintiff alleges it was made at the time of Commissioner Harris' decision to terminate him, which was several months prior to the second Article 78 proceeding. Plaintiff, however, offers no reason for failing to attempt to reopen the section 75 hearing record to raise that purported "new evidence." Accordingly, plaintiff's substantive due process claim must be dismissed.

## B. *First Amendment Claim*

■ As for plaintiff's First Amendment claim, this Court finds that issue preclusion also bars this claim. Plaintiff argues that he asserts a violation of his right of free speech to protest "a public issue," namely, the "quality of medical care in a public facility, and a "right to seek guidance from the state licensing agency about proper professional conduct, without retaliation." Pl. April 11, 1995 Mem. at 9–10; Amended Complaint ¶¶ 20–23. Plaintiff argues that his protests (initially within the DHS, then to the Commissioner of Education, and finally to the New York State courts), based on his refusal to cooperate in any way in "defendants' improper medical record keeping policy," Pl. April 11, 1995 Mem. at 9, "are protected by the First Amendment; they may not furnish the basis for his dismissal from public employment." Plaintiff's Memorandum of Law, dated July 9, 1993, at 12.

The Appellate Division's finding in *Carlen II* that there was no support for plaintiff's retaliation claim, *see Carlen II,* 608 N.Y.S.2d

at 851, precludes plaintiff's free speech claim. Plaintiff's free speech claim is inextricably intertwined with, if not identical to, his claim that he was retaliated against for protesting defendants' alleged "improper medical record keeping policy." *See* Supplemental Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Exh. C, at 3 (plaintiff's Petition in second Article 78 proceeding). As noted above, plaintiff had a full and fair opportunity to prove his retaliation claim.

The decision in *Rameau* is instructive on this issue. In *Rameau*, the district court held that determinations in an Article 78 proceeding barred a subsequent § 1983 claim of retaliatory discharge based on race and ethnicity. Plaintiff Rameau, a probationary state employee, challenged his termination in an Article 78 proceeding claiming, *inter alia*, that the termination was arbitrary, capricious, unlawful and in bad faith because it was based on racial and ethnic discrimination. In holding Rameau's racial discrimination claim barred, the district court stated:

> In the Article 78 proceeding, the plaintiff claimed that his dismissal was arbitrary, capricious, unlawful and made in bad faith *because* it was based on racial and ethnic discrimination. Had the state court found that the allegations of discrimination were supported by the facts it could not have found that plaintiff was properly discharged. Therefore, the finding that plaintiff's dismissal was not based on race or ethnicity was essential to the state court's holding and that claim therefore cannot be relitigated here.

> . . . . .

> Accordingly, all claims in the Federal Complaint founded upon allegations that plaintiff's termination was racially motivated are precluded by the state court judgment, *i.e.*, plaintiff's request for reinstatement with back pay and declaratory relief and damages to the extent that they arise from plaintiff's termination.

*Rameau*, 741 F.Supp. at 71–72 (emphasis in original).

Here, plaintiff failed to prove that his termination was in retaliation for his protests of defendants' policies. Thus, the state court's rejection of his retaliation claim is binding on plaintiff and precludes any claim that defendants brought charges against him and terminated him in retaliation for his exercising free speech. Accordingly, plaintiff's free speech claim must be dismissed.

### C. *Equal Protection Claim*

 Plaintiff claims that he was denied "equal protection of the laws governing medical practice in New York . . . in that he was required to commit malpractice in furtherance of Drs. Harris and Steibel's cover-up efforts." Amended Complaint ¶ 66. He asserts that his "medical license and reputation would be at risk for participating, as a joint tortfeasor, in defendants' deprivation, especially because he was not permitted to state his disagreements on the official medical records, and thus could not protect himself in a lawsuit or other proceeding against him." *Id.* ¶¶ 28, 66–68.

Plaintiff's allegations are not sufficient to state a claim for denial of equal protection. Plaintiff does not allege that he was treated differently from other similarly situated County-employed physicians or that he was discriminated against because he was a member of a certain class; he simply does not allege any disparate treatment based upon invidious discrimination. *See Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–54, 30 L.Ed.2d 225 (1971) (Equal Protection Clause requires that persons similarly situated be treated equally); *North Star Contracting Corp. v. Long Island R.R.,* 723 F.Supp. 902, 911 (E.D.N.Y.1989). In addition, any such claim grounded in plaintiff's argument that, as a medical professional, he cannot be made subject to orders governing the manner in which he was to provide treatment to prisoner-patients was decided by the state court, *see Carlen II,* 608 N.Y.S.2d at 851 (citing *Carlen I,* 527 N.Y.S.2d at 539), and precludes relitigation of that issue in this Court. Accordingly, plaintiff's equal protection claim fails as a matter of law.

### D. *Eighth Amendment Claims*

Lastly, as for plaintiff's Eighth Amendment claims, plaintiff contends that he brings

two claims based indirectly on the Eighth Amendment: first, plaintiff claims that defendants violated SCCF inmates' Eighth Amendment rights to adequate medical care, *see Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); and second, plaintiff claims that defendants violated plaintiff's constitutional right to refuse to violate another's constitutional rights, *i.e.,* the inmates' Eighth Amendment rights to adequate medical care.

■ As a general rule, a litigant has no standing to assert the constitutional rights of others. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). To establish standing, "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* In certain circumstances a plaintiff may be permitted to invoke the court's jurisdiction where plaintiff's right to relief rests on the legal right of a third party. *See, e.g., Singleton v. Wulff,* 428 U.S. 106, 112–16, 96 S.Ct. 2868, 2873–75, 49 L.Ed.2d 826 (1976). As stated by the Supreme Court in *Singleton:*

> [T]he Court has looked primarily to two factual elements to determine whether the rule should apply in a particular case. The first is the relationship of the litigant to the person whose right he seeks to assert. If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court can at least be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit. Furthermore, the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter....
>
> The other factual element to which the Court has looked is the ability of the third party to assert his own right. Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply. If their is some genuine obstacle to such assertion, however, the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly impor-

tant to him, and the party who is in court becomes by default the right's best available proponent.

*Id.* at 114–16, 96 S.Ct. at 2874–75.

■ Upon consideration, this Court finds that assertion of *jus tertii* is not proper in this case. Even acknowledging the closeness of the relationship of a prison physician to third-party prisoner-patients, the prisoner-patients are sufficiently able to assert their Eighth Amendment rights without genuine obstacle to such assertion. Consequently, plaintiff does not have standing to assert a claim that defendants' violated the Eighth Amendment rights of SCCF inmates to adequate medical care.

■ As for plaintiff's claim that defendants violated his constitutional right to refuse to violate SCCF inmates' constitutional rights, even assuming plaintiff has such a constitutional right, *see Harley v. Schuylkill County,* 476 F.Supp. 191 (E.D.Pa.1979), the state court's determination in *Carlen II* bars plaintiff's claim that he was terminated for refusing to violate the inmates' Eighth Amendment rights. Notably, in the second Article 78 proceeding plaintiff claimed that his termination was "retaliatory and ... [t]he charges were a sham ... to prevent him from exercising his professional judgment in the care of his patients and to stop him from protecting his patients' interest"—which, obviously, he claims he refused to do. The Article 78 court's rejection of plaintiff's claims, including his claim that he cannot be made subject to orders governing the manner in which he was to provide treatment to prisoner-patients, *see Carlen II,* 608 N.Y.S.2d at 851, necessarily includes rejection of any claim that plaintiff was terminated because he refused to forego protecting his prisoner-patients' interests in their medical care. Any such claim by plaintiff is inextricably intertwined with the prior determinations, and would amount to a retrial of issues previously decided, let alone an impermissible review of those determinations by this Court.

Accordingly, plaintiff's claims based indirectly on the Eighth Amendment are dismissed.

 

*CONCLUSION*

For the reasons above, defendants' motion is granted, and the Amended Complaint is dismissed. The Clerk of the Court is directed to enter judgment dismissing the Amended Complaint and to close the file in this case.

SO ORDERED.