**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2009
_____

STEVE ARMBRUSTER,

                              Appellant

v.

JOHN C. CAVANAUGH, IN HIS OFFICIAL CAPACITY AS CHANCELLOR
OF THE PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION; F.
JAVIER CEVALLOS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY
AS PRESIDENT OF THE KUTZTOWN UNIVERSITY OF PENNSYLVANIA;
WILLIAM F. MIOSKIE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY
AS CHIEF OF THE KUTZTOWN UNIVERSITY POLICE DEPARTMENT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court   No. 2-09-cv-01006
District Judge: The Honorable C. Darnell Jones, II

Argued:   January 27, 2011

Before: McKEE, Chief Judge, and SMITH, Circuit Judges,
and STEARNS, District Judge[*]

(Filed: February 4, 2011)

OPINION

STEARNS, District Judge.

_____

[*] The Honorable Richard G. Stearns, United States District Judge for the
United States District Court of Massachusetts, sitting by designation.

Corporal Steve Armbruster is employed by the Pennsylvania State System of Higher Education as a police officer with the Kutztown University Police Department. On April 18, 2007, approximately fifteen individuals affiliated with a group known as "Repent America"demonstrated peacefully at an outdoor location on the Kutztown University campus.[2] During the demonstration, approximately 300 counter-demonstrators, representing several different campus organizations and clubs, gathered nearby. The counter-demonstration became increasingly boisterous, and Armbruster and another officer asked the Repent America demonstrators to move away from certain University buildings, which they did.

Some students observing the demonstration became upset and contacted University personnel, objecting to the demonstrators' anti-gay message. Defendants William F. Mioskie, the Chief of the Kutztown University Police Department, and F. Javier Cevallos, the Kutztown University President, came to the scene, accompanied by a second contingent of campus police. Cevallos asked Armbruster to "push" Repent America off campus. Armbruster did not respond.

---

[2] As described in *Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008), Repent America is an organization whose members "believe that homosexuality is sinful and that 'it is their duty to God to warn others about the destructiveness of sin through public proclamation of the gospel of Jesus Christ.'" *Id*. at 189. The organization "communicate[s] their message through displaying signs, offering literature, and engaging in 'open air preaching,' which includes praying, singing, playing music, and talking to people about the Scriptures." *Id*.

Cevallos then approached Chief Mioskie with the same request.

Chief Mioskie determined that the crowd was disorderly and ordered Armbruster to "push" the Repent America demonstrators away. Armbruster interpreted the order to mean that he should arrest or threaten to arrest the demonstrators for disorderly conduct. In Armbruster's view, the Repent America demonstrators were not disorderly. Armbruster voiced his objection to Chief Mioskie's order, expressing concern that it would violate the demonstrators' civil rights. In addition, he feared that obeying the order might subject him to personal liability. After hearing Armbruster out, Chief Mioskie relieved him of his duties and told him to leave the area, which he did. Meanwhile, another officer arrested the leader of Repent America, who was charged with disorderly conduct.[3]

On April 20, 2007, Armbruster was placed on paid administrative leave for refusing to obey Chief Mioskie's order. He was asked not to report for duty or to set foot on campus until a Pre-Discipline Conference on April 23, 2007. Following the disciplinary hearing, Armbruster was suspended without pay for five working days. As a result of the disciplinary action, Armbruster lost some $600 in wages. He now has a disciplinary letter in his file that he believes may derail his future promotion to Sergeant. He has also been warned that should he disobey a similar order in the future, he risks termination. Armbruster alleges that since the

---

[3] According to the Amended Complaint, the leader of Repent America was "subsequently found innocent of the charges." App. 24.

disciplinary action, he has been given only menial job assignments, has been denied training opportunities, and has received an unfavorable performance evaluation. On August 28, 2008, Armbruster's counsel faxed a letter to Chief Mioskie and President Cevallos requesting the retraction of the disciplinary letter and the threat of termination. Mioskie and Cevallos did not respond, and the requests were not granted.

On March 6, 2009, Armbruster brought suit against Mioskie, Cevallos, and John C. Cavanaugh, the Chancellor of the Pennsylvania State System of Higher Education. Armbruster alleged two causes of action under 42 U.S.C. § 1983: the first, an alleged violation of his First Amendment rights; the second, an alleged violation of his "right" to refuse to obey an unconstitutional order. Armbruster requested declaratory relief and damages. In addition, he sought prospective relief in the form of an injunction barring defendants from terminating or otherwise disciplining him should he refuse to obey an unconstitutional order in the future.

On July 16, 2009, defendants filed a motion to dismiss. On March 9, 2010, the District Court granted the motion, finding that Armbruster had failed to state a claim as a matter of law. Judge Jones determined that Armbruster's First Amendment retaliation claim did not survive the holding of *Garcetti v. Ceballos*, 547 U.S. 410 (2006). The District Court reasoned that because Armbruster had spoken in his capacity as a public employee, and not as a private citizen, his speech fell "outside the ambit of First Amendment protection." *Armbruster v. Cavanaugh*,

2010 WL 816385, at *4 (E.D. Pa. Mar. 9, 2010).

The District Court also rejected Armbruster's second cause of action based on "a purported violation of his 'right to refuse to violate others' constitutional rights,'" noting that "over the past thirty years, no Court of Appeals has held such a right exists." *Id.* at *5. As Appellees point out, *Harley v. Schuylkill Cnty.*, 476 F. Supp. 191 (E.D. Pa. 1979), is the only reported federal court case brought under 42 U.S.C. § 1983 that explicitly holds that "the right to refuse to violate another's federal constitutional rights is a right secured by the constitution." *Id.* at 194. Judge Jones found Armbruster's reliance on *Harley* unpersuasive because "[i]t appears the 'right' relied upon in *Harley* was an independent right based upon substantive due process,"[4] and "[s]ince *Harley*, the U.S. Supreme Court has made very clear that . . . claims based on generalized notions of substantive due process are disfavored except in certain explicitly-recognized circumstances." *Armbruster*, 2010 WL 816385, at *5 n.12. The District Court concluded that it found "no basis to depart from the wise course of judicial restraint and break ground by finding a new cause of action based on a fresh liberty interest under the rubric of substantive due process." *Id.*

---

[4] The *Harley* opinion did not explicitly mention "substantive due process"; rather, it simply stated: "we hold that the right to refuse to perform an unconstitutional act is a right 'secured by the Constitution' within the meaning of § 1983." *Harley*, 476 F. Supp. at 194.

5

Armbruster argues that the District Court erred in failing to recognize his substantive due process right to refuse to violate the constitutional rights of others, which he also characterizes as the right to refuse an unconstitutional order without fear of discipline.[5] Relying on *Harley* and decisions of the military courts, Armbruster contends that the right to refuse an unconstitutional order is an implicit, fundamental right, upon which any encroachment must be subjected to heightened scrutiny. He argues that even under a more deferential standard, such as rational basis or intermediate scrutiny, discipline and threats of termination of the kind that he received serve to advance no legitimate governmental purpose or interest.[6]

Appellees argue that under the "more-specific-provision rule," Armbruster's allegations should be analyzed under First Amendment standards to the exclusion of any separate Fourteenth Amendment claim of a violation of substantive due process, even if the First Amendment claim is defunct at its inception. Appellees further argue that Armbruster's Fourteenth Amendment claim was properly dismissed in any

---

[5] The District Court exercised jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), (4). Appellate jurisdiction attaches under 28 U.S.C. §1291. We exercise plenary review of the District Court's order granting a motion to dismiss for failure to state a claim. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). We do not consider the Supremacy Clause argument advanced by amicus American Civil Liberties Union (ACLU) of Pennsylvania, as it was not raised in the District Court proceeding.

[6] Armbruster concedes that his First Amendment claim does not survive *Garcetti*. Consequently, he has "dropped his First Amendment claim" on appeal. Appellant's Reply Br. at 4-5. This concession was reaffirmed by counsel at oral argument.

event because "[a] public employee, especially a police officer, does not have a freestanding fundamental right, grounded in the Constitution, to disobey ordinary supervisory orders, even arguably questionable ones, on an ad hoc basis." Appellee Br. at 11. Finally, Appellees contend that even if this case did touch upon a "fundamental" right implicating substantive due process, the actions of Chief Mioskie and President Cevallos do not "shock the judicial conscience."

Substantive due process is a doctrine reserved for egregious official conduct that trenches upon the most fundamental of civil liberties. "As a general matter, [we have] always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). "We must therefore 'exercise the utmost care whenever we are asked to break new ground in this field,' lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). *See also Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."); *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000) (holding that the denial of a public employee's asserted property interest in continued

employment does not amount to a violation of substantive due process).[7]  If we were inclined to undertake an expansion of the doctrine of substantive due process, this case, which at its heart is an employment dispute, is not the vehicle that we would choose.  We reserve consideration of the doctrine for cases involving the most intimate matters of family, privacy, and personal autonomy.[8]

---

[7] Armbruster cites military cases in support of his broad claim of a constitutional right of a police officer to disobey an illegal order of a superior officer.  *See, e.g., Schmidt v. United States*, 145 Ct.Cl. 632 (1959) (stating that an unlawful order "did not have to be obeyed" and that "a refusal to obey it was not insubordination"); *United States. v. Jones*, 26 F. Cas. 653, 657 (C.C. Pa. 1813) ("Disobedience of an unlawful order, must not of course be punishable."); *United States v. Bright*, 24 F. Cas. 1232, 1238 (C.C. Pa. 1809) (recognizing that certain orders "were unlawful and void").   The fundamental principle that these cases reflect derives not from the U.S. Constitution, but from the Law of War and the Uniform Code of Military Justice.

[8] It is not that we cannot conceive of a factual scenario involving a punishment imposed for disobeying a blatantly illegal order for which substantive due process might appropriately offer redress – for example, an order to shoot to kill peaceful demonstrators.   But that is not this case.

Finally, Armbruster's proposed remedy – an injunction shielding him from disciplinary action "should he refuse an unconstitutional order in the future"[9] – is patently unworkable.  Providing prospective immunity for acts of insubordination based on an officer's subjective understanding of what are often complex issues of law and fact would undermine the order necessary for a paramilitary organization like a police force to function effectively.   In the words of the Supreme Court, "[s]ociety would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement."  *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).  *See also United States v. Kisala*, 64 M.J. 50, 51-52 (C.A.A.F. 2006) ("Long ago this Court recognized the foundational principle of military discipline: 'Fundamental to an effective armed force is the obligation of obedience to lawful orders.'  Reflecting the authority of this principle, an order is presumed to be lawful, and a subordinate disobeys an order at his own peril.").[10]

Because we find no error in the District Court's determination that Armbruster's lawsuit failed to state a viable claim, we will affirm its judgment.

---

[9] Appellant Br. at 3.

[10] While a police officer does not have a constitutional right to disobey an order based on his or her own opinion of law, an officer who is disciplined for questioning the legality of a superior's orders is not entirely without a remedy.   The officer typically has recourse to union grievance procedures or other employment-related legal channels.  *See, e.g., Homar v. Gilbert*, 63 F. Supp. 2d 559, 564, 570 n.11 (M.D. Pa. 1999) (discussing the availability of grievance procedures in the context of a case brought by a campus police officer alleging due process violations).