**UNITED STATES, Appellant**

v.

**Harold D. JOHNSON III, Captain (O-3), U.S. Air Force, Appellee**

**Misc. Dkt. No. 2017-01**

U.S. Air Force Court of Criminal Appeals.

Decided 13 June 2017

**676**

For Appellant: Major Tyler B. Musselman, USAF (argued); Colonel Katherine E. Oler, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

For Appellee: Captain Patrick A. Clary, USAF (argued); Lieutenant Colonel Nicholas W. McCue, USAF.

Before DREW, J. BROWN, and MINK, Appellate Military Judges.

Chief Judge DREW delivered the opinion of the court, in which Senior Judge J. BROWN and Judge MINK joined.

## PUBLISHED OPINION OF THE COURT

DREW, Chief Judge:

The United States brings this appeal under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862, asserting that the military judge erred by abating the proceedings until the Secretary of the Air Force or her designee either denied or approved Appellee's waiver request allowing him to apply for retirement while pending court-martial charges, after completing 19

years but less than 20 years of active duty service.[1] We exercise jurisdiction under Article 62 and find that the military judge erred in abating the proceedings.

### I. BACKGROUND

Appellee is charged with making a false official statement, wrongful use of a controlled substance, and obstruction of justice, in violation of Articles 107, 112a, and 134, UCMJ, 10 U.S.C. §§ 907, 912a, 934. A punitive discharge, specifically a dismissal, is an authorized punishment for the offenses alleged against Appellee.

Appellee's Total Active Federal Military Service Date (TAFMSD) is 10 May 1997, the date he enlisted in the Air Force. His Total Active Federal Commissioned Service Date (TAFCSD) is 15 August 2007, the date he accepted his commission. Appellee became eligible to retire as an enlisted member on 10 May 2017 when he completed 20 years of active military service. However, he is not eligible to retire as an officer until 15 August 2017, at which time, if still on active duty without any intervening disqualifying service, he will have completed 10 years of total active federal commissioned service.

On 22 July 2016, the charges were referred to a general court-martial. On 26 July 2016, the charges were served on Appellee. On 1 August 2016, Appellee submitted a request for retirement in lieu of court-martial (RETILO). In his request, he noted that he could not withdraw his request without approval of the Secretary of the Air Force (SAF) or her designee and, as a prior enlisted member who had not yet completed ten years of commissioned service, he was subject to be-

---

1. We ordered oral argument on the following four issues:

 *I. Jurisdiction*

A. Whether this court has jurisdiction under Article 62(a)(1)(a), Uniform Code of Military Justice, 10 U.S.C. § 862(a)(1)(a), to hear the Government's appeal of the military judge's abatement order in this case.

B. If this court should find jurisdiction lacking under article 62(a)(1)(a), might the court properly consider the government's appeal as a petition for extraordinary relief under the All Writs Act, 28 U.S.C. § 2651(a).

 *II. Merits*

A. Whether the military judge erred by abating the proceedings.

B. Whether the administrative processing of a request to retire in lieu of court-martial is within the scope of the military judge's authority.

In light of our holding in finding jurisdiction under Article 62, we do not address whether this court could have considered the appeal as a petition for extraordinary relief, as such relief is only available if there is "no other adequate means to attain the relief." *Cheney v. United States Dist. Court*, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004); *Howell v. United States*, 75 M.J. 386, 390 (C.A.A.F. 2016).

ing retired as an enlisted member. On 15 August 2016, the special court-martial convening authority (SpCMCA), the 21st Space Wing Commander, returned the RETILO on the basis that it was a conditional request, conditioned on separation only after Appellee would become retirement eligible on or after 10 May 2017.

On 19 August 2016, Appellee's civilian defense counsel wrote a letter to the SpCMCA asserting that Air Force Instruction (AFI) 51-201[2] required the SpCMCA to forward the RETILO through the general court-martial convening authority (GCMCA) to SAF for review and action. On 25 August 2016, the SpCMCA responded to civilian defense counsel, denying his request to forward the RETILO to the GCMCA and SAF. On 16 September 2016, Appellee attempted to supplement his RETILO, to request retirement only as an officer.

On 21 September 2016, Appellee filed with the military judge a written Motion to Continue or Abate Trial, asserting among other facts that the SpCMCA had returned the RETILO without action. On 26 September 2016, the Government filed a written Response to the Defense Motion. On 6 October 2016, the military judge held a telephonic conference with the parties, pursuant to Rule for Courts-Martial (R.C.M.) 802. On 7 October 2016, the military judge issued a written ruling, in which he stated that "Note 13 for [AFI 36-3203[3]] Table 2.2 applies to Rule 4. It requires requests for retirement be reviewed by the [GCMCA] before trial. The GCMCA is then required to send the request to the Secretary of the Air Force for review and *action.*" (Emphasis added.) The military judge abated the court-martial until such time as Appellee's RETILO is "properly treated in accordance with AFI 36-3203, paragraph 3.2 and Table 2.2, Rule 4." The military judge further stated that "the court is not precluding the setting of another date for trial that would be far enough in the future to permit the proper processing of the accused's request before the trial proceeds."

On 10 October 2016, the Government filed a written Motion for Reconsideration: Defense Motion to Continue or Abate Trial. The Government attached to its motion a declaration from Lieutenant Colonel (Lt Col) MH, the Chief of Military Personnel Law within the Air Force Personnel Center Office of the Staff Judge Advocate (AFPC/JA); and a declaration from Colonel (Col) JH, the Chief of the Air Force Legal Operations Agency (AFLOA) Military Justice Division (JAJM). Lt Col MH's declaration on behalf of AFPC/JA included:

> A member under court-martial charges where trial has not begun is restricted from retirement, but this restriction may be waived by [the Secretary of the Air Force] or Secretarial delegee. *See* AFI 36-3203, Table 2.2, Rule 4. However, the position of this office, as well as the AFPC Military Retirement Policy / Procedures office, is that the decision on whether to waive the restriction for RETILO Court-Martial, or other similar restrictions imposed in Table 2.2, is made only after the affected member has the requisite [Total Active Federal Military Service] to be currently eligible for military retirement.

Col JH's declaration on behalf of JAJM included:

> The Military Justice Division is the office of primary responsibility for processing military justice matters requiring action by the Office of the Secretary of the Air Force, including officer requests for resignations and retirement for the good of the service in lieu of trial by court-martial. In my capacity as the Chief of the Military Justice Division, I have been asked whether a request for retirement for the good of the service in lieu of trial by court-martial by an officer who is not eligible to retire at the time of the request must be forwarded for action by the Secretary of the Air Force. The Military Justice Division would not forward for Secretarial action such a request because the officer is not eligible to retire at the time of the request and

---

2. AFI 51-201, *Law: Administration of Military Justice* (6 Jun. 2013) (Air Force Guidance Memorandum 2016-01, 3 Aug. 2016).

3. AFI 36-3203, *Personnel: Service Retirements* (18 Sep. 2015).

would return such a request to the originating office.

On 14 October 2016, Appellee filed a written Response to the Government Motion for Reconsideration. On 16 October 2016, the military judge issued a written ruling denying the Government motion.

On 1 November 2016, JAJM granted the Government permission to proceed to trial prior to Secretarial action on Appellee's RETILO, on the docketed trial date of 30 November 2016, indicating that as of 27 October 2016, Appellee's retirement application was incomplete. The permission to proceed instructed the Government to not "under any circumstances, prepare a convening authority action before the request to retire is resolved." On 30 November 2016, the Government was still processing Appellee's RETILO through the echelons of command. Pursuant to the JAJM permission, the military judge proceeded with the trial on that date. However, due to a discovery issue unrelated to Appellee's RETILO, the military judge granted Appellee's motion to continue the trial.

The day before the scheduled resumption of the trial, the Deputy Director of the SAF Personnel Council (Personnel Council) issued the following memorandum:

27 February 2017
MEMORANDUM FOR AFLOA/JAJM
FROM: SAF/MRBP
SUBJECT: Return without Action re RETILO of Capt Harold
D. Johnson III

Based on the AFLOA/JAJM and HQ AFPC declarations / recommendations and subsequent coordination with SAF/GC and AF/JA, I am returning without action the Retirement in-lieu-of Court-martial (RETILO) application of Capt Harold D. Johnson III. There is no actionable decision to bring before the Personnel Council because the applicant is not eligible to retire at this time.
[AW], DAF
Deputy Director
Secretary of the Air Force
Personnel Council

On 28 February 2017, trial resumed and the military judge took up the Personnel Council memo on his own motion. Appellee asserted that the Government had not complied with the military judge's order, in that there was no final "action." The trial counsel asserted that the Government had complied with the order, in that an individual authorized to act on behalf of SAF had made a decision and that, to the extent the "decision" was not the "action" contemplated by the military judge, Appellee had avenues available to him to appeal the administrative decision outside the court-martial. Before making a final decision whether to abate the proceedings, the military judge permitted the Government to call Col JH to testify on the motion telephonically.

Col JH described the procedures JAJM, the Air Force Review Boards Agency, and the SAF Personnel Council use to process requests to retire in lieu of court-martial. Col JH testified that a RETILO is a request for SAF to waive a retirement restriction in AFI 36-3203, Table 2.2, in order for an officer facing court-martial to apply to retire. She indicated that based on the military judge's prior rulings, Appellee's RETILO was forwarded by the SpCMCA to the GCMCA, who forwarded it the Major Command commander, who in turn forwarded it to JAJM. At each stage, the corresponding commander included a recommendation. When JAJM received the package, they attached a legal review and recommendation, indicating that the RETILO was not ripe for consideration, and then forwarded the package to the Office of The Judge Advocate General, which concurred with the JAJM legal review and recommendation. The package was next sent to the Office of SAF's General Counsel, which also concurred with the JAJM legal review and recommendation, and further concluded that since the RETILO was not ripe for consideration, it could not be reviewed by the Personnel Council based on the mission, roles, responsibilities, and limited authorities SAF had delegated to it. The package was then forwarded through the Air Force Vice Chief of Staff to the SAF Personnel Council, where its Deputy Director issued the decision above. Col JH testified that, per the Air

Force Instructions, Appellee's RETILO had been fully processed and could not be considered further.

The military judge did not supplement his previous written findings of fact to address Col JH's roughly hour-long testimony. He did note that the Air Force interprets the retirement regulation differently than he does. Specifically, contrary to the Air Force's view, he concluded that (1) if an officer has 19 years of service when served with court-martial charges, he may request a retirement restriction waiver and apply for retirement and that (2) once submitted, SAF or her designee must either approve or deny the request. Accordingly, the military judge abated the proceedings until such time as SAF either approved or denied the request. The military judge ruled that the positions of the parties had become intractable and that, in his opinion, the Government had the right to appeal his decision pursuant to Article 62(a).

## II. Jurisdiction and Standard of Review

▪ Like every federal court, we have a "special obligation" to satisfy ourselves of our own jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *Loving v. United States*, 62 M.J. 235, 239 (C.A.A.F. 2005). Jurisdiction is a question of law that we review de novo. *Randolph v. HV*, 76 M.J. 27, 29 (C.A.A.F. 2017) (citing *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013)). In determining whether we have jurisdiction, we look to the entire record to assess the factual basis for our legal conclusion.[4]

▪ "The burden to establish jurisdiction rests with the party invoking the court's jurisdiction[.]" *Randolph*, 76 M.J. at 29 (quoting *United States v. LaBella*, 75 M.J. 52, 53 (C.A.A.F. 2015)). Military trial and appellate courts, like all federal courts, are courts of limited jurisdiction. *United States v. Wuterich*, 67 M.J. 63, 70 (C.A.A.F. 2008).

"[P]rosecution appeals are not favored and are available only upon specific statutory authorization." *Id.*

▪ From a court-martial in which a punitive discharge may be adjudged, Article 62(a)(1)(A), UCMJ, provides this court jurisdiction to hear appeals by the Government of a military judge's order or ruling which terminates the proceedings with respect to a charge or specification (other than an order or ruling that amounts to a finding of not guilty). We may not consider an Article 62 appeal "unless the trial counsel provides the military judge with written notice of appeal from the order or ruling within 72 hours of the order or ruling." Article 62(a)(2), UCMJ. This "notice of appeal is mandatory, jurisdictional, and not subject to extension" by the military judge. *United States v. Flores-Galarza*, 40 M.J. 900, 905 (N-M Ct. Crim. App. 1994) (citing *United States v. Mayer*, 21 M.J. 504, 506 (A.F.C.M.R. 1985)). Thus, this court is without jurisdiction to consider an appeal under Article 62 in the absence of a timely notice of appeal, "unless the military judge has denied the Government the opportunity to provide the notice." *United States v. Flores-Galarza*, 40 M.J. at 905; *see United States v. Browers*, 20 M.J. 356, 359 n.4 (C.M.A. 1985).

▪ Not all abatement orders terminate the proceedings and, unless the order or ruling does, it is not appealable by the Government under Article 62(a)(1)(A). For example, an abatement for a specified period of time or until the happening of a particular event that is likely to occur would be more in the nature of a continuance than a termination and thus not appealable under Article 62(a)(1)(A). However, the conditional nature of an abatement does not necessarily preclude an appeal of the order or ruling. *United States v. True*, 28 M.J. 1, 4 (C.M.A. 1989). The military judge's characterization of the order or ruling does not control whether it is appealable under Article 62; rather, it is the

4. For example, in establishing jurisdiction to hear the Government's appeal under Article 62(a)(1), we must factually assess whether the trial counsel filed a timely notice of appeal within 72 hours of the military judge's ruling. By definition, this predicate jurisdictional fact is chronologically beyond the scope of the military

judge's findings of fact. However, *as to the merits*, we may not make our own findings of fact and are limited to determining whether the military judge's findings are clearly erroneous or unsupported by the record. *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995).

effect of the order or ruling and whether that effect is tantamount to a termination of the proceedings. *Id.* at 3 (military judge's unwillingness to proceed with the trial in the face of the convening authority's intractable refusal to comply with military judge's order to provide the defense with expert assistance effectively terminated the proceedings). *Cf. United States v. Harding*, 63 M.J. 65, 67 (C.A.A.F. 2006) (military judge's willingness to proceed with the trial once the United States Marshals Service enforced his writ of attachment did not terminate the proceedings).

 We review a military judge's decision to abate a court-martial for abuse of discretion. *United States v. Ivey*, 55 M.J. 251, 256 (C.A.A.F. 2001); *United States v. Wright*, 75 M.J. 501, 508-09 (A.F. Ct. Crim. App. 2015). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010). In deciding Article 62 appeals, we "may act only with respect to matters of law." Article 62(b), UCMJ. We may not overturn the military judge's findings of fact unless they are clearly erroneous or unsupported by the record. If findings necessary to the resolution of the legal issues are incomplete or ambiguous, we must remand for clarification or additional findings. *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995).[5]

### III. Discussion

### A. Jurisdiction

#### 1. Timeliness of the Notice of Appeal

 At oral argument, Appellee asserted that the Government's notice of appeal was not filed within the jurisdictional 72-hour window from the military judge's abatement order. The Government filed its notice of appeal on 3 March 2017. Appellee asserts that the time for filing a Government appeal began with the military judge's initial written

ruling on 7 October 2016. If the Government was appealing the military judge's 7 October 2016 ruling or his 16 October 2016 ruling on the Government's motion for reconsideration, then Appellee would be correct and jurisdiction under Article 62 would be lacking for failure to file a timely notice of appeal. However, the Government is not appealing the military judge's temporary abatement orders in October 2016. Those orders abated the proceedings until the Government agreed to process Appellee's RETILO beyond the SpCMCA up to the SAF level. The Government complied with those orders and received permission to proceed with the court-martial from JAJM in the meantime. In recognition of the Government's compliance with his earlier orders and in acknowledgement of the JAJM permission to proceed, the military judge proceeded with trial on 30 November 2016 and only thereafter continued the trial for reasons unrelated to the RETILO.

It was the military judge's abatement order issued on 1 March 2017, as a result of his disagreement with the SAF Personnel Council's 27 February 2017 decision, that the Government has appealed. The military judge abated the court-martial at 1308 hours on 1 March 2017. The Government filed its notice of appeal at 1259 hours on 3 March 2017, less than 48 hours later, and well within the 72-hour window permitted by Article 62(a)(2). We find that the Government has fulfilled the jurisdictional requirement to file a timely notice of appeal.

#### 2. Whether the 1 March 2017 Abatement Terminated the Proceedings

 Unlike his October 2016 abatement rulings, the military judge considered his final abatement ruling to have the functional effect of terminating the proceedings. Contrast the military judge's language in his initial 7 October 2016 ruling ("With this ruling, the court is not precluding the setting of another date for trial that would be far enough in the future to permit the proper processing of the accused's request before the trial proceeds.") and his 16 October 2016

---

**5.** See *supra* note 4 and accompanying text regarding our ability to consider the entire record in determining whether we have jurisdiction to consider this appeal.

reconsideration ruling ("[T]he court does not see a situation where 'intractability' has set in.") with his 1 March 2017 ruling on the record ("[T]he situation is now ... where intractability has set in, so that to me makes it to the point where the government would have the right to appeal.") Nevertheless, the military judge's characterization of his abatement ruling does not control whether it is appealable under Article 62. *True*, 28 M.J. at 8.

Appellee asserts that the final abatement is merely temporary. He correctly points out that the Government's refusal to process the RETILO has been based on the chronological fact that he was not eligible to retire when he submitted his request because he did not *yet* have 20 years of total active federal military service. As of 10 May 2017, he now does. However, the Government has consistently asserted that Appellee could not apply for a RETILO because he was not eligible to retire *when he submitted it*. In the face of the military judge's first two abatement rulings, the Government reluctantly processed the RETILO all the way up to the body authorized to speak on behalf of SAF. The Deputy Director of the Personnel Council, acting in his official delegated capacity on behalf of SAF, concluded that there was "no actionable decision to bring before the Personnel Council because the applicant is not eligible to retire at this time." At oral argument, the Government steadfastly asserted that, based on the Deputy Director's decision, there was presently no RETILO that could be further processed, even if SAF, as of 10 May 2017 or thereafter, desired to approve or disapprove it.

For purposes of determining whether we have jurisdiction under Article 62(a)(1)(A), the question is not whether we agree, or disagree with the military judge, Appellee, or the Government. Rather, the question is whether, at the time the military judge abated the proceedings on 1 March 2017, intractability had set in to the point that the Government was not likely to comply with the military judge's order to process the RETILO further. The military judge found that intractability had set in, and we agree. Under the facts of this case, we find that the 1 March 2017 abatement had the functional effect of terminating the proceedings with respect to all charges. Accordingly, we conclude we have jurisdiction under Article 62 to consider this appeal on the merits.

## B. Merits

There are two questions presented by the merits of this appeal: (1) What deference, if any, must the military trial and appellate courts afford to the military administrative authorities entrusted with interpreting and implementing personnel regulations; and (2) Under what circumstances, if any, does a military judge have authority to review administrative action in lieu of court-martial?

### 1. Deference to Military Administrative Authorities' Interpretation of Personnel Regulations

At trial and before this court, the Government relies upon *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) in asserting that the military judge and this court should defer to the Air Force's interpretation of its retirement regulation, AFI 36-3203. In *Chevron*, the Supreme Court said:

> Judges are not experts in the field.... Courts must, in some cases, reconcile competing political interests, but not on the basis of the judges' personal policy preferences. In contrast, an agency to which Congress has delegated policymaking responsibilities may, within the limits of that delegation, properly rely upon the incumbent administration's views of wise policy to inform its judgments....
>
> When a challenge to an agency construction of a statutory pro-vision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges ... have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: "Our Constitution vests

such responsibilities in the political branches." *TVA v. Hill*, 437 U.S. 153, 195, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

*Chevron*, 467 U.S. at 865–66, 104 S.Ct. 2778.

■ While *Chevron* dealt with an agency's interpretation of its governing statute, the Supreme Court has also made clear that the degree of deference is even greater when applied to an agency's interpretation of its own regulations:

> Just as we defer to an agency's reasonable interpretations of the statute when it issues regulations in the first instance, see *Chevron, supra*, the agency is entitled to further deference when it adopts a reasonable interpretation of regulations it has put in force. See *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). Under *Auer*, we accept the agency's position unless it is "plainly erroneous or inconsistent with the regulation." *Id.*, at 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)).

*Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 397, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008).

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.... When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.

*Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); see also *United States v. Kisala*, 64 M.J. 50, 53 n.16 (C.A.A.F. 2006).

However, neither *Chevron* nor *Auer* deference applies if the statute or regulation is clear on its face and an inconsistent agency interpretation is properly rejected. *Christensen v. Harris Cty.*, 529 U.S. 576, 587-88, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (holding that *Chevron* deference only applies to agency interpretation of an ambiguous statute; *Auer* deference only applies to agency interpretation of its ambiguous regulation).

Appellee asserts that *Chevron* / *Auer* deference should not be applied in courts-martial. Others have suggested that military courts should give some, but only a lesser degree of deference to their own military service's interpretation of its regulations, on the theory that military courts, as part of the same agency, are competent to provide the agency interpretation. For example, the Government has suggested if we do not give full *Chevron* / *Auer* deference to the Air Force interpretation of AFI 36-3203, we should follow the approach of *Christensen*, 529 U.S. 576, 120 S.Ct. 1655, and give *Skidmore* "respect":

> [P]etitioners and the United States contend that we should defer to the Department of Labor's opinion letter.... Specifically, they argue that the agency opinion letter is entitled to deference under our decision in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 [104 S.Ct. 2778], 81 L.Ed.2d 694 (1984). In *Chevron*, we held that a court must give effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute. *Id.* at 842-844 [104 S.Ct. 2778].
>
> Here, however, we confront an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference.... Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 [65 S.Ct. 161], 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the "power to persuade," *ibid.*

*Christensen*, 529 U.S. at 586–87, 120 S.Ct. 1655. However, in *Christensen*, it was the interpretation of a *statute* by an opinion letter, policy statement, agency manual, or the like. Here, we are considering an agency interpretation of its own *regulation* as contemplated by *Auer*.

The concept that an Air Force military judge is fully empowered to speak on behalf of the Air Force in interpreting an Air Force regulation seems to underpin the military judge's ruling below. In so doing, the military judge afforded no weight to the interpretations made by the Air Force administrators vested with the responsibility to implement the regulation or the Air Force legal advisors who are authorized to provide agency-wide legal guidance. The approach that the military judge took below and that Appellee urges us to adopt is that if the *military judge's* interpretation was reasonable, then this court must *defer to him.* However, we review matters of law de novo on appeal and whether the military judge's interpretation of AFI 36-3203 was reasonable is not the proper standard.

■ As stated by the Court of Appeals of the Armed Forces, whether a military judge must provide deference to an agency determination hinges on whether the rule or regulation in question is "outside the normal purview" of the military courts. *Kisala,* 64 M.J. at 53. The question is the competence of the courts in general, not an individual judge in particular. Whether a military judge should defer to the military service does not depend on the particular judge's personal knowledge, but on the professional knowledge, training, and experience expected of all military judges. For example, even if a particular military judge's former career field was CV-22 pilot, if an issue before the court was an interpretation of AFI 11-2CV-22 Volume 3, CV-22 Operations Procedures, the former-pilot military judge would still owe deference to the agency administrators entrusted with implementing the regulation.

■ When it comes to interpreting the UCMJ, the Military Rules of Evidence, the Rules for Courts-Martial, or any other contents of the Manual for Courts-Martial, *matters within the normal purview of military courts,* all military judges are competent to interpret them and do not afford any deference to an agency interpretation. For

matters within the normal purview of military courts, it is interpretation by appellate courts, not agency representatives, to which military judges must defer. As to these matters, it does not matter whether the agency interpretation is from a trial counsel, the head of a Military Justice Division, or The Judge Advocate General. However, when it comes to interpreting an agency regulation—whether it is a personnel regulation, such as AFI 36-3203; a military justice regulation, such as AFI 51-201;[6] or a flying operations regulation, such as AFI 11-2CV-22 Volume 3—the opinion of an administrator entrusted with implementing the regulation or of a legal advisor assigned by the Secretary or The Judge Advocate General with providing legal guidance concerning the regulation, the military trial and appellate courts will accept the agency's position unless it is "plainly erroneous or inconsistent with the regulation." *Holowecki,* 552 U.S. at 397, 128 S.Ct. 1147; *Auer,* 519 U.S. at 461, 117 S.Ct. 905; *Robertson,* 490 U.S. at 359, 109 S.Ct. 1835. The burden on a servicemember challenging that agency position is "particularly high." *Kisala,* 64 M.J. at 54.

■ Turning to the case at bar, we find, as the military judge did below, that the relevant retirement *statutes* are clear on their face: Appellee was eligible to retire as an officer no earlier than after having served at least 20 years of Total Active Federal Military Service, including at least ten years of Total Active Federal Commissioned Service. 10 U.S.C. § 8911(a). Appellee was eligible to retire as an enlisted member no earlier than after having served at least 20 years of total active federal military service. 10 U.S.C. § 8914. As such, there is no issue regarding the military judge's interpretation of the pertinent statutes.

With regard to the relevant retirement *regulation,* AFI 36-3203, the military judge and the parties agree that the regulation is—at least in part—ambiguous, in particular on the issue of whether an officer may submit an application to retire in lieu of court-mar-

---

6. To the degree a military justice regulation construes or interprets the Uniform Code of Military Justice, the Military Rules of Evidence, the Rules for Courts-Martial, or any other contents of the Manual for Courts-Martial, then the courts do not defer to the agency's interpretation of them because they are matters within the normal purview of military courts.

tial before he has the requisite 20 years of total active federal military service and at least 10 years of total active federal commissioned service. The military judge interpreted the regulation to allow Appellee to submit his application 12 months before he was eligible to retire. The Air Force administrative authorities, from the SpCMCA to the Deputy Director of the Personnel Council, and the Air Force legal advisors tasked to interpret the regulation from the Chief of Military Personnel Law at AFPC, through the Chief of JAJM, the Office of The Judge Advocate General, and the Office of the Secretary of the Air Force's General Counsel were all in agreement that the regulation does not allow Appellee to submit his application to retire in lieu of court-martial until he was actually eligible to retire.

In his 7 October 2016 written ruling, the military judge found that:

> In the teleconference, among other things, the parties agreed to stipulate that the Air Force does permit active duty members who have served 19 years of active service to submit requests to retire at the 20-year point of their career. In other words, the parties agree that the Air Force will allow its active duty members to submit voluntary requests to retire after 19 years of active duty service.

The military judge accepted the verbal stipulation of fact during a telephonic session he held with counsel pursuant to R.C.M. 802. The record is silent as to whether Appellee participated in the teleconference or agreed to the stipulation. While this stipulation is not one that practically amounted to a confession, which would require Appellee's express agreement, the better practice is to follow the first sentence in the Discussion to R.C.M. 811(c) ("Ordinarily, before accepting any stipulation the military judge should inquire to ensure that the accused understands the right not to stipulate, understands the stipulation, and consents to it."). To the degree the military judge was referring to members who are *not* subject to a retirement restriction—such as being under court-mar-

tial charges—the finding is misleading and irrelevant to Appellee's case. To the degree the military judge was referring to members in Appellee's situation who *are* subject to the retirement restriction of being under court-martial charges, the record unequivocally reveals that long-standing and consistent Air Force policy is that the Air Force does *not* allow them to submit a voluntary request.[7] While, in this Article 62 appeal, we may not substitute the evidence in the record for the military judge's contrary finding, we can and do reject, as unsupported by the record, the military judge's erroneous finding.

Although we agree with the military judge that the regulation is not a model of clarity and internal consistency, at least one part of AFI 36-3203, which the Government raised below and again before us, strongly supports the Air Force's interpretation of its personnel regulation. Paragraph 2.1.4.1 states: "If no restrictions apply for active duty retirements, the application [to retire] may be submitted up to 12 months in advance of the desired retirement date." The parties and the military judge all agreed that a restriction *did* apply to Appellee's retirement application, the one found in Table 2.2, Rule 4: "Is under court-martial charges and trial has not begun."

Nevertheless, the military judge took note of other portions of AFI 36-3203 and referenced his personal knowledge of another Air Force member (who apparently was not pending court-martial) who was able to apply to retire 12 months in advance of retirement eligibility. The military judge then rejected the Air Force's interpretation of the AFI and substituted his own interpretation that the regulation not only permitted Appellee to apply to retire in lieu of court-martial before he was eligible to retire, but also required the Air Force, up to and including the Secretary of the Air Force herself or her delegee, to process Appellee's request for a waiver of his retirement restriction to a final action, meaning a denial or an approval. The military judge stated:

---

7. Technically, for members facing a retirement restriction in AFI 36-3203, Table 2-2, the "request" is actually a *request for a waiver* of the restriction, along with (if and when the waiver is approved) an *application to retire*.

If you fall under court-martial charges after you hit 19 years of active duty service you will be restricted from retiring. That restriction may be waived if the member requests it. The waiver authority is the Secretary of the Air Force or the Secretarial delegee. The request must be acted upon; that is, denied or approved. The Air Force interprets the regulation differently. It doesn't want to take action on the request with a denial or approval of the waiver. Instead, quote, "No action" end quote, was taken. As a result, the Court once again abates the proceeding.

The military judge disagreed with the Air Force's interpretation of its own personnel regulation.[8] The Air Force's interpretation was not plainly erroneous or inconsistent with any unambiguous portions of the regulation. We are therefore bound to accept the Air Force's interpretation and the military judge erred when he failed to accept the Air Force's position in interpreting its own regulation. *Auer*, 519 U.S. at 461, 117 S.Ct. 905.

## 2. Authority of Military Judges to Review Administrative Action

 The portion of the military judge's ruling that mandated that the Secretary of the Air Force must either approve or deny Appellant's RETILO was improper for a second, more fundamental, reason. It exceeded the authority of the military judge.

 "Courts-martial are courts of limited jurisdiction and have only the powers delegated to them by Congress." *United States v. French*, 27 C.M.R. 245, 251 (C.M.A. 1959); *see also Runkle v. United States*, 122 U.S. 543, 556, (7 S.Ct. 1141, 30 L.Ed. 1167, 1887); *Cooke v. Orser*, 12 M.J. 335, 338 (C.M.A. 1982). A court-martial is not a court of equity and military judges are not ombudsmen, authorized to right every perceived wrong affecting an accused. *See United States v. Bell*, 38 M.J. 358, 370 (C.M.A. 1993). The military courts do not have plenary au-

thority to "oversee all matters arguably related to military justice." *Clinton v. Goldsmith*, 526 U.S. 529, 536, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999).

Military judges have no inherent judicial authority separate from a court-martial to which they have been detailed.... To the extent that they perform judicial duties such as authorizing searches and reviewing pretrial confinement, their authority is not inherent but is either delegated or granted by executive order. *See* Mil. R. Evid 315(d)(2), Manual, *supra* (military judge may authorize searches *if* authorized by regulations of Secretary of Defense or Secretary concerned); RCM 305(g) (military judge may release from confinement); RCM 305(i)(2) and RCM 305(j) (military judge may review propriety of pretrial confinement).

*United States v. Weiss*, 36 M.J. 224, 228 (C.M.A. 1992) (emphasis in original), *aff'd*, 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). "[J]udges are not given the task of running the Army.... Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

 Military judges have no authority to review collateral administrative actions, except those that directly impact an accused's procedural due process rights in the court-martial itself. "Failure to follow regulatory provisions while processing administrative actions does not necessarily create issues of procedural due process that are reviewable by military courts of review." *United States v. Shoup*, 31 M.J. 819, 821 (A.F.C.M.R. 1990) (quoting *United States v. White*, 19 M.J. 662 (C.G.C.M.R. 1984)). However, military judges are authorized to review administrative actions that directly im-

---

8. The military judge made a finding of fact that the *Air Force* position was that a person pending court-martial could not request waiver of the restriction prohibiting retirement until the person was eligible to retire, that is had the statutory 20 years of Active Federal Military Service. This finding was not clearly erroneous as the testimo-

ny of Col JH supported that this was indeed the Air Force position (rather than merely the position of trial counsel) and the memorandum from the Deputy Director of the Personnel Counsel stated that there was no actionable decision to bring before the Personnel Council because Appellant was not eligible to retire at that time.

pact the procedural due process of the court-martial. These include: administrative actions that affect the admissibility of evidence (Rule for Courts-Martial (R.C.M.) 1001(b)(2); *United States v. Ariail*, 48 M.J. 285, 286-87 (C.A.A.F. 1998) (personnel records maintained in accordance with departmental regulations)); the Government's refusal to produce witnesses (R.C.M. 703(b); *United States v. Breeding*, 44 M.J. 345, 350 (C.A.A.F. 1996) (funding the travel of defense character witnesses); R.C.M. 703(e); *United States v. Harding*, 63 M.J. at 66 (compelling witness in custody of mental health records to produce them for *in camera* review)); the Government's refusal to provide defense expert assistance (R.C.M. 703(d); *United States v. Short*, 50 M.J. 370, 373 (C.A.A.F. 1999) (funding of urinalysis expert)); the Government's refusal to produce evidence (R.C.M. 703(f); *United States v. Mosley*, 42 M.J. 300, 303 (C.A.A.F. 1995) (funding of urinalysis retest)); pretrial punishment in violation of Article 13, UCMJ (*Howell v. United States*, 75 M.J. 386, 394 (C.A.A.F. 2016) (military judge exceeded his authority in providing confinement credit without evidence of an intent to punish where the Government paid the accused as an E-1 pending his rehearing)); pretrial agreements between an accused and the convening authority (R.C.M. 705; *United States v. Hunter*, 65 M.J. 399, 400 (C.A.A.F. 2008)); and unlawful command influence (Article 37, UCMJ; *United States v. Lewis*, 63 M.J. 405, 412 (C.A.A.F. 2006); *United States v. Mahoney*, 36 M.J. 679 (A.F.C.M.R. 1992)).

No court has found that a military judge has the authority to direct the Secretary to take action on a request to resign in lieu of court-martial. On the contrary, we are persuaded by our sister court's analysis of an analogous situation:

> [W]hether the Secretary intended to permit United States Army Reserve members on active duty under 10 U.S.C. § 12304 to submit a request for Resignation for the Good of the Service in Lieu of Court-Martial *is a matter for the Secretary's determination, not ours.*
>
> . . . .
>
> In enacting the Uniform Code of Military Justice, Congress created a system of shared authority over military justice among the President, the judiciary, the Secretaries of the military departments, and The Judge Advocates General. As a matter of comity, military appellate court decisions should avoid, whenever possible, limiting, expanding, or otherwise disturbing the Secretary's exercise of his [or her] Congressionally granted authority under the UCMJ. *See Woods*, 26 M.J. at 374. *We have taken great care to adhere to this principle and to not intrude on the Secretary's authority.*

*United States v. Hargrove*, 50 M.J. 665, 668–69 (Army Ct. Crim. App. 1999) (emphasis added) (footnote omitted) (finding the Secretary has a variety of options, including returning the request for resignation *without action*). Here, the Deputy Director of the SAF Personnel Council elected to return Appellant's RETILO package "without action." This was a determination that the Secretary of the Air Force authorized the Deputy Director to make.

The military judge cited no legal authority in the UCMJ, Rules for Court-Martial, or case law that authorized his intrusion upon the Secretary's statutory authority over military retirements or regulatory authority over requests for waiver of retirement restrictions. We likewise find none and conclude that the military judge abused his discretion by using incorrect legal principles. He exceeded the power delegated to him by Congress in reviewing a collateral administrative action that did not directly impact Appellee's procedural due process rights in his court-martial. *Cf. United States v. Woods*, 26 M.J. 372, 375 (C.M.A. 1988) ("Just as we have recognized that an administrative action cannot divest a court-martial of its judicial power, we likewise recognize that a court-martial can neither deprive the Secretary of his powers nor defeat a lawful agreement between an accused and the Secretary.") (The Government's refusal to effectuate a resignation in lieu of court-martial *that had been approved by the Secretary* is judicially enforceable.); *United States v. Woods*, 26 M.J. at 375 (Everett, C.J., concurring) ("We do not hesitate to set aside a court-martial action which violates a pretrial agreement. By the same token, we should not hesitate to set aside this court-martial conviction, which conflicts with

the agreement implicit in the acceptance of appellant's resignation.").

We hold that unless and until the Secretary or other competent authority has approved a request for administrative disposition in lieu of court-martial, absent some evidence of a violation of Article 18, UCMJ, or other violation of an accused's procedural due process rights, military judges have no authority to review the collateral administrative processing of such a request.[9]

## IV. CONCLUSION

Accordingly, the appeal of the United States under Article 62, UCMJ, is **GRANT-ED.** The military judge's ruling granting the Defense Motion to Continue or Abate Trial is **REVERSED.** The abatement is lifted and the record will be returned to the military judge for action consistent with this opinion.

**9.** Appellee has recourse through the military's system of administrative review of personnel actions, to include filing an application with the Board for Correction of Military Records. 10 U.S.C. § 1552; AFI 36-2603, *Personnel: Air Force Board for Correction of Military Records* (5 Mar. 2012). Challenges to military administrative discharge processing and other administrative personnel actions, including challenges of Board for Correction of Military Records decisions, are cognizable in the United States Court of Federal Claims through the Tucker Act, 28 U.S.C. § 1491; or in the federal district courts through the Administrative Procedures Act, 5 U.S.C. § 551, *et seq.*; and "Little Tucker Act," 28 U.S.C. § 1346(a)(2), subject to those courts' prudential requirement that plaintiffs generally must first exhaust their administrative remedies prior to filing suit in federal court.